**HICKMAN et ux. v. COOPER et ux.**

No. 2650.

Court of Civil Appeals of Texas. Eastland.

April 16, 1948.

Rehearing Denied May 7, 1948.

Cox, Dyer & Taylor, of McAllen, and Hill & Lochridge, of Mission, for appellants.

Magus F. Smith, of McAllen, and Oxford & Ramsour, of Edinburg, for appellees.

LONG, Justice.

This suit was instituted by W. Percy Cooper and wife against C. M. Hickman and wife, for the cancellation and rescission of a deed, note and deed of trust given in connection with the purchase by plaintiffs from defendants of a ten acre citrus orchard in Hidalgo County, Texas. Plaintiffs sought cancellation of the above instruments on the ground of misrepresentation and fraud on the part of the defendant, C. M. Hickman, in that Hickman misrepresented the number of a certain kind of citrus trees planted upon said ten acre tract. A trial was had before the court with the aid of a jury. In response to special issues submitted, the jury found: (a) that prior to the purchase by the plaintiffs of the ten acre orchard, the defendant C. M. Hickman falsely represented to the plaintiffs that one-half of the citrus trees theron were composed of pink grapefruit and oranges; (b) that such representation was material representation; (c) that same was relied upon by the plaintiffs in purchasing the orchard; (d) that the fair and reasonable cash market value of the orchard on or about April 17, 1946 was $15,000.00; (e) that the fair and reasonable cash market value of the orchard would have been, had one-half of the citrus trees thereon been pink grapefruit and oranges, the sum of $17,500.00; (f) that plaintiffs soon after their discovery of the varieties of citrus trees actually planted upon the ten acre orchard requested the defendant, C. M. Hickman, to take back said orchard; (g) that after the plaintiffs learned of the varieties of the trees actually upon the ten acre grove, the plaintiffs, either by words, conduct or action, did not evidence a purpose and intent to waive any right which they might have had to rescind the purchase of said orchard. Based upon the above find-

ings, the court entered a judgment in favor of the plaintiffs, decreeing such cancellation and rescission. The defendants have appealed.

Defendants, by their first point, contend the trial court erred in refusing to hold that, as a matter of law, plaintiffs had waived their rights to rescind, had ratified the various contracts and were estopped to seek cencellation thereof. Defendants base their contention upon seven acts on the part of the plaintiffs, to wit: (1) by entering into a contract with the Pharr Citrus Growers Association; (2) by insisting on defendant carrying out the contract to care for the orchard; (3) by employing Ferguson to care for the orchard; (4) by paying taxes on the property; (5) by allegations in their pleadings; (6) by offering to sell the land to defendant Hickman; (7) by trying to sell the land through a broker.

On January 21, 1947, eight days after this suit was filed, plaintiff W. Percy Cooper executed a contract with the Pharr Citrus Growers Association, a cooperative marketing association, whereby he became a member of such association and sold and agreed to deliver to the association all of the citrus fruit grown or produced on the ten acre tract in question during the year ending June 30, 1948, and every year thereafter continually, the member having the right of termination effective as of June 30th of any year, provided the member was not then indebted to the association, and by giving a written notice by registered mail during the first fifteen days of June prior to the termination date. The contract further providing that if a member should, in good faith, sell his orchard, he should be released from the agreement upon written notice thereof to the association.

It is the contention of the defendants that the plaintiffs, by entering into the above contract, after they had learned all the facts of the alleged fraud, affirmed their purchase of the land and waived any right they might otherwise have had and were estopped to seek cancellation and rescission.

Plaintiffs were residents of Henderson, Kentucky. In the spring of 1946, they, in company with some other people named Thomas, came to Texas on a "share the

860

expense" basis. Mr. Cooper being in ill health, had sold his business in Kentucky and decided to come to the Rio Grande Valley of Texas for a vacation without any intention of buying land. The Thomases 'were familar with the Rio Grande Valley, having been there a number of times and owned some property there. Upon the arrival of the party in the valley, Mr. Thomas introduced the Coopers to the defendant, C. M. Hickman, who was a real estate man. The defendant Hickman suggested that he drive them around so that they might see the valley. The Coopers, in company with the Thomases, were driven through the valley by the defendant Hickman on a sight-seeing tour. Later, they were taken to the grove involved in this suit at which time they inspected it. Plaintiffs had never seen a citrus orchard prior to coming to the valley and had no knowledge about them. However, they had learned that pink and red blush grapefruit brought more money than white grapefruit and that an orchard containing pink and red blush grapefruit was much more valuable than one containing white grapefruit. They also learned that oranges brought more money than grapefruit and that an orange grove was more valuable than a white grapefruit orchard. It was the contention of the plaintiffs and found as true by the jury, that the defendant Hickman represented to the plaintiffs that the grove in question was one-half pink grapefruit and oranges and the other one-half was white Marsh Seedless grapefruit, whereas, in truth and in fact, there was only approximately one-sixth of the orchard in pink grapefruit and oranges, these representations being made during the spring of the year when no fruit was on the trees, and it was impossible for plaintiffs to tell whether the grapefruit was red or white.

Plaintiffs purchased the orchard from the defendant, paying $12,500.00 in cash and giving defendants a vendor's lien note for the sum of $5,000.00. At the time the trade was made, plaintiffs deposited with defendant Hickman $500.00 for the purpose of taking care of the grove during the summer.

Shortly after the sale, plaintiffs returned to Kentucky where they stayed during the summer and did not return to the valley until early in December, 1946. When they returned, there was fruit upon the trees in the ten acre orchard. They proceeded to examine the fruit from each tree and found that the orchard did not contain the varieties of fruit as represented to them by the defendant Hickman. They immediately went to see the defendant and told him that the orchard was not as represented and demanded a rescission of the contract. The defendant, C. M. Hickman, at that time refused to take back the orchard. On the 13th day of January, 1947 plaintiffs instituted this suit.

■ We do not agree with the contention that plaintiffs, in entering into the contract with the fruit growers association, thereby ratified the transaction with Hickman and waived their right to rescind the contract and to seek cancellation of the deed. At the time the contract was entered into with the citrus growers association, the fruit in the orchard was ripe. Being a perishable crop, it became the duty of the plaintiffs to harvest the fruit and to protect their interest as well as the interest of the defendants. It is true that they were not compelled to enter into the contract with the citrus growers association, but as we understand the record, such contracts are in use generally in the valley and is the well recognized method of marketing fruit in that section. Too, under the record, it is shown that the defendant, C. M. Hickman, suggested to the representative of the fruit growers association that he contact Mr. Cooper in an effort to get him to sign the contract in question. The plaintiffs were not familar with the growing and marketing of citrus fruit and it was only natural that they depend upon the advice and counsel of people who had long resided in that vicinity. As said by the San Antonio Court of Civil Appeals in the case of Alexander et al. v. Walker, 239 S.W. 309, at page 312:

"When, after a proper tender of the property by the buyer, the seller refuses to accept it, the buyer has the right to handle and dispose of it as may be reasonably necessary to protect his interests and still maintain his rights to rescind."

Prior to the time plaintiffs entered into the contract with the fruit growers associa-

tion, they had tendered the property to the defendant, C. M. Hickman, and requested that he take it back and rescind the trade. The defendant specifically refused to accept said property and return the purchase price. It thereupon became the duty of the plaintiffs to use all reasonable care to make the defendants' loss as light as possible and to not wilfully allow the property to deteriorate or be destroyed. They had the right to do any acts in regard to the property reasonably necessary to protect their interest and at the same time, maintain their claim to rescind. Black on Rescission & Cancellation, Vol. 2, page 1439.

The plaintiffs acted promptly upon their discovery of the misrepresentations made by the defendant with regard to the orchard. They immediately notified him that they were dissatisfied with the trade and asked him to take the property back. Thereafter, within a short time, they filed this suit to cancel and rescind the contract. Further, they received no benefits from the contract with the fruit growers association. The association took charge of the fruit, gathered it and sold it. The plaintiffs collected none of the money, but left it in the hands of the association, pending the outcome of this suit, and tendered the proceeds of the sale of the fruit crop to the defendants, upon the trial of this case.

 Before we would be authorized in holding that the plaintiffs, as a matter of law, waived their right to rescind the contract, the evidence must clearly show an election on their part not to rescind. If the evidence merely shows that they acted for the purpose of conserving the property and does not show a purpose to give up the right to rescind the contract, then no waiver is shown to exist. It is our opinion that such a waiver is not shown as a matter of law, but that an issue of fact was probably raised by the evidence and that such issue was found favorable to the plaintiffs, therefore, the trial court did not err in refusing to hold that plaintiffs waived their right to rescind the contract.

Defendants further contend that plaintiffs waived their right to rescind by insisting upon the defendant C. M. Hickman carrying out his contract to care for the orchard in question. As has heretofore been stated, at the time the sale of the land was consummated, plaintiffs deposited with the defendant Hickman the sum of $500.00 to be used by him in watering and caring for the orchard. At the time of the conversation between plaintiffs and defendant, when they insisted that he take the land back, they also complained to him about his not having carried out his contract to care for the orchard. We do not agree with the contention that the evidence shows, as a matter of law, that they thereby waived their right to rescind the contract.

We make the same holding with reference to defendant's contention that there was a waiver because appellees hired a man to water and care for the orchard after they knew of the fraud.

 It is shown from the evidence that the orchard had been neglected; that the trees were yellow and needed water. The land was very valuable and as has been heretofore stated, it was the duty of the plaintiffs, after the defendant refused to rescind the contract, to use reasonable care in preserving the property. We make the same holding with reference to defendant's contention that a waiver is shown by reason of the fact that plaintiff paid the taxes on the land for the reason that the taxes were paid by plaintiffs in order to avoid penalty and interest. Defendants also contend that plaintiffs waived their right to rescind the contract by reason of certain wording in their original petition. This petition was abandoned prior to the trial and was not introduced in evidence. Under such circumstances, it could not be considered by the court for any purpose. Kuykendall v. Vaden, Tex.Civ.App., 187 S.W.2d 143.

The evidence discloses that at the time plaintiff attempted to get Mr. Hickman to take back the land and return the purchase price, they told him they would sell him the land at a loss. Thereafter, they inquired of a real estate agent if it could be sold for $17,500.00. We do not believe these acts show a waiver as a matter of law. All of the acts of the plaintiffs that defendants claim constituted a waiver, when taken alone or together, do not meet the requirements of the law to show a waiver. They

do not show unequivocal acts of acquiescence and confirmation of the contract. The most that can be said is that the evidence on this point probably raises an issue of fact which was determined by the jury favorably to the plaintiffs. Thus it will be seen that defendants' first point presents no merit and is accordingly overruled. Nu-Enamel Paint Co. v. Davis, Tex.Civ.App., 63 S.W.2d 861.

■■ Defendants, by their second point, contend that the trial court erred "in refusing to require that the appellees, as conditions precedent to the relief granted, offer to do equity and make restitution of what they had received under the contract sought to be cancelled." This point is not well taken. Plaintiffs, in their pleadings, specifically offered to do equity in that the prayer concludes as follows: "that the said sale and contract be and all things as between these parties, cancelled and rescinded and that the parties be placed in status quo as nearly as possible." We construe this to mean a tender of the land. The prayer specifically requests that the deed between the parties be cancelled and rescinded and that all of the parties be returned to status quo. This, in our opinion, is an offer to return the land. Furthermore, the judgment in the case effectually protects all the parties thereto. The deed was cancelled, the land was decreed to be the property of the defendants, the title to the fruit crop was adjudged out of the plaintiffs and into the defendants. The parties' were placed in status quo by judgment of the court. 7 Tex.Jur. 967.

■ We believe that the third point presented by defendants is without merit. It is their contention that plaintiffs were not entitled to rescind the contract for the reason by their own acts they made it impossible to restore the defendants to the status quo. As has been hertofore stated, the court did, in its judgment, place the parties in the same position as they were on the date when the trade was consummated. It is true plaintiffs entered into a contract with the fruit growers association to gather and market the fruit crop but under the judgment as entered, the defendants were awarded the proceeds from such sale. The contract with the fruit growers association may be cancelled at any time before June of any year upon written notice by the land owner. Further, if the land owner sells the property, the contract may be cancelled. It is our belief that the judgment of the court divesting title to the land out of plaintiffs and into the defendants would have the same effect as if the plaintiffs had sold the land and that the contract with the fruit growers association may be cancelled by the defendants, if they so desire, by giving a written notice thereof.

■ At the time plaintiffs instituted this suit, the defendant had sold the $5,000.00 vendor's lien note executed by plaintiffs as part of the purchase price. The owner of said note was not made a party to this suit. Defendants, in their first amended original answer, filed a plea in abatement under oath, pointing out that the $5,000.00 note had been transferred to Rio Grande Building & Loan Association. It is their contention that the court erred in not sustaining such plea in abatement and in cancelling the deed from Hickman to Cooper and the vendor's lien note, without the owner of said note being a party to the suit.

We do not agree with this contention. The judgment cancelled the vendor's lien note as between the plaintiffs and the defendants. But it did not undertake to dispose in any way of the rights of the owner of the note. Plaintiffs are still liable on the note and they are not relieved from liability thereon by the judgment. The owner of the note was a proper, but not a necessary party to the action. 7 Tex.Jur., page 974; McKenzie v. Frey, Tex.Civ.App., 198 S.W. 1009; Security State Bank v. Merritt, Tex.Civ.App., 237 S.W. 990.

■ The defendants requested the court to submit the following special issue to the jury:

"Do you find from a preponderance of the evidence that the plaintiffs would not have purchased the property in question had the representation inquired about in Question No. 1, not been made?"

The court refused to submit this issue. To this action, the defendants duly excepted and has assigned the failure of the court to submit such issue as error. The court sub-

mitted issues inquiring whether the representations were material and were relied upon by plaintiffs. We believe the issues as submitted were the ultimate issues of fact and that the requested issue is a phase or different shade of the issues submitted. There was no error in the refusal to submit the issue. Rule 279, Texas Rules of Civil Procedure.

All other points raised by the defendants in their brief have been carefully considered and are expressly overruled. We find no reversible error in the record, and the judgment of the trial court is accordingly affirmed.

Judgment affirmed.